UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

―――――

ANDREW OWENS #426942,

                      Petitioner,                      Case No. 2:08-CV-302

v.                                        Honorable Gordon J. Quist

JEFFREY WOODS,

                      Respondent.

_____/

## OPINION

### I. BACKGROUND

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C.

§ 2254.  Petitioner is serving a mandatory life sentence consecutive to two concurrent terms of two

years, imposed by the Muskegon County Circuit Court on October 3, 2002, after a jury convicted

Petitioner of first-degree murder and two counts of felony firearm.  In his petition for habeas corpus

relief, Petitioner raises nine grounds for relief, as follows:

    I.        Whether capital murder petitioner is entitled to habeas corpus relief on
claims which has not been exhausted for purpose of comity principles; where
petitioner has no other means or state corrective process in which to present
his constitutional claims.

    II.      Whether exclusion of capital murder defendant and counsel from a hearing
at which the only defense witness was accused of dodging subpoenas issued
by prosecution, where witness jailed and ultimately became a material
witness for the prosecution, and petitioner was prejudiced by deprivation of
counsel.

    III.    Whether petitioner was denied XIV amendment due process right to be
personally present at a critical pre-trial period of his trial where his alibi
witness was providing critical testimony at a undisclosed hearing.

IV.     Whether petitioner is entitled to habeas relief where the state prosecutor knowingly solicited or presented false testimony as substantive evidence of petitioner's guilt in violation of petitioner [sic] right [sic] due process and a fair trial and impartial trial under the XIV amendment of the United States Constitution.

V.      Whether petitioner is entitled to habeas relief where his IV and XIV amendment right to confrontation due process and a fair trial to the U.S. Constitution was violated, and where the state court decision is contrary to clearly established federal law as determined by the Supreme Court.

VI.     Whether petitioner is entitled to habeas relief where his IV and XIV amendment right to confrontation due process and a fair trial to the U.S. Constitution was violated, and where the state court decision is contrary to clearly established federal law as determined by the Supreme Court.

VII.    Whether trial counsel was ineffective and denied petitioner a fair trial in his complete failure to present petitioner's only line of defense alibi; counsel even failed to investigate even after noticed [sic] had been filed.

VIII.   Whether habeas relief is warranted and the procedural bar tossed aside where petitioner is actually innocent of the offenses for which he stand [sic] convicted of.

IX.     Whether petitioner received ineffective assistance of appellate counsel failed to raise the claims outlined in habeas corpus petition.

(Docket #1.)

Respondent filed an answer to the petition on July 2, 2009, and Rule 5 materials were filed on August 10, 2009.  Petitioner filed a motion to amend his petition on June 24, 2010, which was denied by the court.  Petitioner subsequently filed two additional motions to amend, as well as a motion to stay the proceedings so that he could exhaust additional claims in the state courts.  The court granted Petitioner's motion to stay on July 14, 2011, and denied the motions to amend as moot, indicating that Petitioner would be given the opportunity to amend his petition once the stay was lifted.  The court also ordered that Respondent's answer be stricken from the record.  (Docket #60.)

Petitioner filed a motion for relief from judgment in the trial court, asserting that the jury was never sworn in and had no jurisdiction to try his case.  Petitioner also claimed that there

was an error related to an arraignment hearing for two material witnesses.  Petitioner's motion for

relief from judgment was denied on October 28, 2011.  Petitioner did not appeal the denial of his

motion to the Michigan Court of Appeals or the Michigan Supreme Court.  On December 9, 2011,

the court granted Petitioner's motions to lift the stay and to amend the petition.  (Docket #64.)  In

his *pro se* amended petition, which appears to have been intended to supplement his original

petition, Petitioner raises four grounds for relief, as follows:

I.      Petitioner was denied his fundamental right to a fair trial by an impartial jury and due process of law, as guaranteed by the 6th and 14th Amendment to the United States Constitution and Michigan Constitution 1963 Art 1, Sec 14, 17 and 20; his conviction and sentence are absolutely void because the panel of unsworn jurors selected to try his case was not a jury and did not have jurisdiction to render the verdict and he was never placed in jeopardy of conviction.  United States Amendment 5; trial counsel was ineffective for not objecting; appellate counsel was ineffective for failing to raise this issue in Petitioner's appeal of right, which is a fatal jurisdictional defect, constituting structural error requiring automatic reversal of Petitioner's convictions.

II.     Petitioner Owens was denied due process of law when the prosecutor in this case deliberately violated the rule of discovery as set forth in *Brady v. Maryland*, 373 US 83 (1963), US Const Am 14, by withholding material exculpatory evidence; and failed to disclose critical pretrial material witness bond hearing of Petitioner's alibi witness Gwendolyn Hathorn to defense counsel.

III.    Whether exclusion of a capital murder Petitioner and counsel from hearing at which the only defense witness was accused of dodging subpoenas issued by prosecution; where defense alibi witness was jailed and ultimately became a material witness for the prosecution, was contrary to clearly established law, warranting relief; hearing was critical stage in prosecution, and Petitioner was prejudiced by deprivation of counsel, violating Petitioner's 6th Amendment right.

IV.     Whether Petitioner was denied his 14th Amendment right to be personally present at a critical pre-trial hearing where his alibi witness was providing critical testimony at a undisclosed hearing.

(Docket #62.)

3

Respondent has filed an answer to the original and amended petition (docket #69) stating that Petitioner has procedurally defaulted several of his claims and that the remainder should be denied because they lack merit.  In its June 15, 2004, opinion with regard to Petitioner's direct appeal, the Michigan Court of Appeals summarized the pertinent facts from the trial court record:

> Defendant's convictions arise from the shooting death of DeMarco McBride, who was shot in his home at approximately 8:30 a.m. on May 2, 2001. The victim's brother, James McBride, testified that he heard the sound of gunfire and went to the living room where he saw defendant struggling with the victim, who was trying to stop defendant from shooting. Defendant eventually broke free and ran from the house, firing two more shots toward the victim as he left. In the early afternoon of May 2, 2001, Stanley Hudgins turned himself in to the police and provided information that he was with defendant earlier that day and that defendant was the man who shot the victim. Although he attempted to minimize his involvement in the crime, Hudgins provided valuable information to the police, including the location of the gun that was allegedly used in the crime. Gwendolyn Hathorn, the woman with whom defendant spent the night before the shooting, and Hudgins' girlfriend both testified that they saw defendant before 8:30 a.m. on the morning of the shooting and saw him again around 9:00 a.m. that morning. Defendant changed his clothes during that time frame. This information corroborated Hudgins' version of events. Defendant was arrested on the afternoon of the shooting after an unrelated traffic stop and was lodged in the Kent County Jail. While there, he shared a cell with Anthony Lee, who subsequently testified that defendant admitted to shooting the victim.

*People v. Owens*, 2004 WL 1335838, at*1 (Mich. App. June 15, 2004).  As noted by Respondent:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Petitioner was convicted of first-degree murder under alternative theories of premeditated and felony murder, as well as two counts of felony firearm. Following Petitioner's conviction, he filed an appeal in the Michigan Court of Appeals, asserting:

I. It was a violation of [Petitioner's] right to confrontation, and of the Michigan Rules of Evidence, to present Anthony Lee's testimony via videotaped deposition, over objection, without a showing that he was unavailable and where he was in fact readily available.

II. Evidence that [Petitioner's] mother told the investigating officers that [Petitioner] admitted the shooting to her, introduced via the officers' statements on [Petitioner's] taped interrogation, violated the hearsay rule, and, being apparently false, also violated [Petitioner's] right to due process; defense counsel's failure to move to redact those portions of the interrogation denied [Petitioner] the effective assistance of counsel.

III. It was a violation of the hearsay rule and reversible error to admit Ms. Owens' out-of-court statements to the police, under the guise of impeachment, where the statements went to the central issue of the case and where she gave no other testimony which made her credibility relevant.

IV. [Petitioner] was denied his constitutional right to a fair trial by the repeated instances of prosecutorial misconduct; defense counsel's failure to object constituted ineffective assistance.

V. The trial court erred in responding to the jury's request for a transcript of the testimony by effectively foreclosing any rereading; counsel's acquiescence constituted ineffective assistance of counsel.

VI. Where [Petitioner] was convicted of committing murder, on alternative theories, the constitutional protection against double jeopardy requires vacation of one count of felony firearm.

In addition, Petitioner raised the following claims in a *pro per* supplemental brief:

I. [Petitioner] was denied his state and federal constitutional right to the effective assistance of trial counsel.

II. [Petitioner] was denied his constitutional rights to due process of law and a fair trial by the prosecutor's continuous and pervasive improper comments made during trial.

(Docket #38.)

5

On June 15, 2004, the Michigan Court of Appeals vacated one of Petitioner's felony firearm convictions and its attendant sentence, but affirmed the remainder of Petitioner's convictions and sentences. *People v. Owens*, 2004 WL 1335838 (Mich. App., June 15, 2004). Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, asserting all of the claims raised in the Michigan Court of Appeals except for the double jeopardy claim. The Michigan Supreme Court denied leave to appeal, stating that it was not persuaded that the questions presented should be reviewed by the court. *People v. Owens*, 472 Mich. 877 (2005) (unpublished table decision).

In September of 2005, Petitioner filed a motion for relief from judgment in the trial court, asserting that there was insufficient evidence to support the verdict, that the prosecutor failed to provide complete discovery and knowingly relied on false testimony, that the trial court admitted improper hearsay evidence, and that trial counsel was ineffective. The trial court denied Petitioner's motion for relief from judgment pursuant to MCR 6.508(D)(3), stating that Petitioner had "not met his burden of establishing good cause for failure to raise these issues on appeal." *People v. Owens*, No. 01-46044-FC, slip op. at 4 (May 8, 2006). (Docket #43.) The trial court further stated:

> Moreover, even if Defendant has shown good cause and actual prejudice, the merits of the issues raised in this motion do not entitle Defendant to the requested relief. He claims there was insufficient evidence to sustain a conviction for either premeditated or felony first degree murder. Essentially the Defendant claims the evidence is inadequate because all of the witnesses lacked credibility for a variety of reasons. *If* the testimony of any of the witnesses is believed, there was ample evidence for a rational trier of fact to conclude beyond a reasonable doubt that Defendant was guilty of first degree murder. This testimony included Defendant's admissions to two different witnesses that he shot the victim as well as the testimony of the victim's brother who heard a shot and witnessed Defendant struggling with the victim and fleeing the scene while firing additional shots.

As for the alleged failure of the Prosecutor to provide Defendant with a police report by [Lieutenant] Start, there does not appear to be any effort by the Prosecutor to conceal exculpatory evidence.  Defendant was provided with a report that referenced [Lieutenant] Start's report and the relevant contents thereof.  Defendant's exhibit F.  If he was not satisfied with this he could have specifically requested the report of [Lieutenant] Start.  He did not.  Moreover, the Defendant's mere allegations in his unverified brief that he did not receive this report is not proof of that fact.  Finally, error, if any, was harmless in view of the fact that Defendant cross-examined [Lieutenant] Schram on the very contents of the Start report.  Defendant's exhibits F and I.

Defendant contends that the Prosecutor knowingly presented perjured testimony.  He contends that the Prosecutor knew [Lieutenant] Schram testified falsely when he related some statements he heard the Defendant make to [Lieutenant] Schram.  Defendant's position assumes that Schram's testimony is false.  Simply because [Lieutenant] Start didn't recall Defendant's statement does not render Schram's testimony false.  In fact, [Lieutenant] Start deferred to Schram's recollections when questioned about this.

Defendant also contends the Prosecutor knowingly presented false testimony from James McBride in which he identified Defendant as the perpetrator.  He claims the identification testimony was false because McBride failed to identify the perpetrator when he reported the incident to emergency dispatch.  While these inconsistent positions may cause a jury to carefully scrutinize Mr. McBride's testimony, his credibility is a question for the trier of fact - not the prosecutor.

Finally, Defendant submits that the testimony of [Lieutenant] Schram involved hearsay.  Specifically he refers to testimony of [Lieutenant] Schram regarding questions put to Defendant by a polygraph examiner and his responses thereto.  The questions by definition are not hearsay because they are non-assertive.  MCR 801(a).  The Defendant's responses are not hearsay because they constitute an admission by a party opponent.  MCR 801(d)(2).  [Lieutenant] Schram's testimony that the polygraph examiner told him he didn't hear a comment made by the Defendant is hearsay.  However, this testimony was presented in response to a question propounded by defense counsel.

Therefore, it is clear from the foregoing analysis that Defendant's original motion does not establish good cause for failure to raise these issues in his appeal.  Moreover, assuming *arguendo*, that Defendant has shown good cause and actual prejudice as required by

MCR 6.508(D), the merits of the issues do not entitle Defendant to relief.

*People v. Owens*, No. 01-46044-FC, slip op. at 4-6 (May 8, 2006).  (Docket #43.)

In addressing Petitioner's claim of ineffective assistance of counsel, the trial court

stated:

Defendant has filed an amended motion seeking a hearing pursuant to *People v. Ginther*, 390 Mich 436 (1973) alleging ineffective assistance of counsel.  The issue of ineffective assistance of trial counsel could have been raised on appeal.  In fact, some issues regarding ineffective assistance of counsel were raised in the appeal and the court ruled against Defendant's position.  Defendant has failed to establish good cause for failure to raise the remaining issues of ineffective assistance of counsel and request a *Ginther* hearing in his appeal and [sic] right.  He is, therefore, precluded from raising these issues in this motion for relief from judgment.  MCR 6.508(D)(2) and (3).

In his second supplemental motion Defendant raises several more issues.  He alleges that his trial counsel was incompetent for failing to object on the basis of MCL 767.79 and 768.26 to the introduction of a video tape of a witness who testified that Defendant admitted shooting the victim.  The Court of Appeals considered this video issue in the context of a waiver issue.  Clearly, the allegation of ineffective assistance of counsel could have been raised at that time and it wasn't.  Therefore, Defendant now must show good cause for failure to raise the issue of incompetence of trial counsel and actual prejudice resulting therefrom.  MCR 6.508(D)(3).  He alleges the good cause is ineffective assistance of appellate counsel in failing to raise the issue of the ineffective assistance of his trial attorney.

To establish ineffective assistance of appellate counsel, Defendant must establish that the omitted issue is clearly stronger that [sic] those presented.  *Smith, supra.*  He has failed to sustain this burden.

Assuming, *arguendo*, there is good cause due to ineffective assistance of appellate counsel, the Defendant has failed to show actual prejudice.  Even in the absence of the video testimony, there was enough evidence from the victim's brother, the corroborated testimony of James Hudgins and Defendant's own statements such that there was not a reasonably likely chance of acquittal.  Moreover, there was a valid waiver of any objection to the video.  Defendant was permitted to confront and cross examine the witness at the

deposition which was attended by Defendant and his attorney. This is not offensive to the maintenance of a sound judicial practice.

Defendant also contends admission of the video was improper because it forced him to choose between his Fifth and Sixth Amendment rights and that there were a number of improper comments by the Prosecutor in his closing argument. These issues were not raised on appeal and neither good cause for failure to do so nor actual prejudice resulting therefrom has been established.

*People v. Owens*, No. 01-46044-FC, slip. op. at 6-8 (May 8, 2006). (Docket #43.)

Petitioner filed an application for leave to appeal the denial of his motion for relief from judgment in the Michigan Court of Appeals, which was denied for failure to establish entitlement to relief pursuant to MCR 6.508(D). *People v. Owens*, Michigan Court of Appeals No. 27784 (Dec. 14, 2007). (Docket #42.) Petitioner's subsequent application for leave to appeal in the Michigan Supreme Court was denied on June 23, 2008. *People v. Owens*, No. 135761, 481 Mich 913 (2008) (unpublished table decision). (Docket #43.) Petitioner took no further action until he filed the instant habeas corpus action in this court.

## II. AEDPA STANDARD OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 791 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court

of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655.  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000).  "Yet, while the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be  instructive in assessing the reasonableness of a state court's resolution of an issue."  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final."  *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply.  *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

Where the state court has not articulated its reasoning, the federal courts are obligated to conduct an independent review to determine if the state court's result is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. *See Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 784 (2011) (citing with approval *Harris*, 212 F.3d at 943 n.1). Where the circumstances suggest that the state court actually considered the issue, including where a state court has issued a summary affirmance, the review remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *Id.* at 784-85; *Harris*, 212 F.3d at 943. However, where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." In such circumstances, the court conducts *de novo* review. *McKenzie*, 326 F.3d at 727 (limiting *Harris* to those circumstances in which a result exists to which the federal court may defer); *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and

convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, the court finds that Petitioner is not entitled to relief.

### III. ANALYSIS

Initially, the court notes that the first claim set forth in Petitioner's original habeas corpus petition concerns whether the court should address the merits of his unexhausted claims. Because Petitioner has now exhausted the claims raised in his proposed amended petition, claim I is moot.

With regard to claim IV in the original petition for habeas corpus relief, Respondent asserts that Petitioner procedurally defaulted his claim that the prosecutor knowingly presented false testimony. When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner raised claim IV in his direct appeal, asserting that police detectives were erroneously allowed to testify about statements attributed to his mother. In his appeal, Petitioner claimed that the statements were hearsay and that his counsel was ineffective in failing to object. In addressing this claim, the Michigan Court of Appeals stated:

> Defendant next challenges the admission of his custodial statement, arguing that certain statements made by the detective when questioning him were hearsay. The admission of evidence is generally reviewed for an abuse of discretion. *People v. Bartlett,* 231 Mich.App 139, 158; 585 NW2d 341 (1998). However, because defendant did not object to the challenged evidence at trial, we review this unpreserved issue for plain error affecting the outcome of trial. *People v. Carines,* 460 Mich. 750, 763-764; 597 NW2d 130 (1999).

> On May 3, 2001, defendant was questioned by two detectives. During the questioning, one of the detectives asked defendant several questions that were premised on statements allegedly made by defendant's mother. For example, the detective told defendant that his mother said that he admitted his involvement in the shooting, but told her that it was done in self-defense. Defendant denied that his mother made such statements, indicated that the statements were lies if his mother made them, and indicated that the police were

13

fabricating the information to try and obtain information to convict him.

Contrary to what defendant argues, the statements attributed to defendant's mother by the detective were not inadmissible hearsay. MRE 801(c) defines "hearsay" as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." See also *People v. Tanner,* 222 Mich.App 626, 629; 564 NW2d 197 (1997). The detective's questions and the statements attributed to defendant's mother were not offered to prove the truth of the matters asserted therein. Rather, they were part and parcel of defendant's interview and were offered to explain the context of defendant's statements, and to show their effect on defendant's responses. Accordingly, they were not hearsay.

We also reject defendant's claim that his due process rights were violated by the introduction of the detective's questions and statements. Before the jury heard defendant's recorded interview, defendant's mother testified about her contact with defendant on the day of the shooting. She did not testify in accordance with the statements that were attributed to her by the detective during defendant's interview. She was impeached with some prior inconsistent statements, but those statements also did not reveal that she made the statements attributed to her by the detective during defendant's interrogation. Moreover, defendant indicated, during the interview, that he believed the detective was making up information to try and obtain a confession. Defendant correctly observes that a prosecutor may not knowingly use false testimony to obtain a conviction and has a duty to correct false evidence when it appears. *People v. Herndon,* 246 Mich.App 371, 417; 633 NW2d 376 (2001), citing *People v. Lester,* 232 Mich.App 262, 276; 591 NW2d 267 (1998). But the prosecutor in this case did not use false testimony or evidence to obtain a conviction. He did not refer to, or rely on, the alleged statements as truthful, substantive evidence. Indeed, he made no reference to them at all. Moreover, it was apparent, as defendant suggested during his interrogation, that the detectives made the challenged statements in an attempt to mislead or trick defendant into confessing. Further, the jury was specifically instructed with respect to how it should consider defendant's prior statements and the court's instruction did not provide any basis for the jury to consider the detective's interview questions as substantive evidence of defendant's guilt. There was no plain due process error.

We additionally find no merit to defendant's claim that trial counsel was ineffective for failing to object to the introduction of the

recorded interview without moving to redact the detective's questions or requesting a cautionary instruction. To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's error, there is a reasonable probability that the result of the proceeding would have been different. *People v. Stanaway,* 446 Mich. 643, 687-688; 521 NW2d 577 (1994). Defendant must overcome the presumption that counsel's challenged conduct constituted sound trial strategy. *People v. Charles Williams,* 240 Mich.App 316, 331-332; 614 NW2d 647 (2000); see also *People v. Gonzalez,* 468 Mich. 636, 644-645; 664 NW2d 159 (2003) (an appellate court will not second-guess counsel on matters of strategy). Here, the recorded police interview, as presented, demonstrated that defendant consistently maintained his innocence, even when confronted with alleged statements by his mother implicating him in the charged offense. Moreover, evidence that a detective attempted to obtain a confession from defendant through deceitful tactics reflected negatively on the detectives, who maintained that they were being truthful even when they were not. Defendant has not overcome the presumption that counsel's acquiescence in the use of the recorded statement, as presented, was a matter of trial strategy.

*People v. Owens*, 2004 WL 1335838, at *2-3 (Mich. App. Jun. 15, 2004).

As noted by the Michigan Court of Appeals, Petitioner failed to object to the challenged evidence at trial. The Michigan Court of Appeals expressly relied on Michigan's contemporaneous objection rule in denying Petitioner's claim. It is clear that the contemporaneous objection rule was well-established at the time of Petitioner's trial. *See, e.g.*, *People v. Kelly*, 423 Mich. 261, 271 (1985). A rule designed to arm trial judges with the information needed to rule reliably "serves a governmental interest of undoubted legitimacy." *Lee v. Kemna*, 534 U.S. 362, 385 (2002). Petitioner's failure to comply with the state's independent and adequate state procedural rule, *i.e.*, making a contemporaneous objection, caused him to default his claims in state court. *See Wainwright v. Sykes*, 433 U.S. 72, 86-88 (1977); *Lancaster v. Adams*, 324 F.3d 423, 437 (6th Cir. 2003); *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996). Accordingly, review by this court is barred unless Petitioner can show cause and prejudice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991);

*Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Taylor v. McKee*, 649 F.3d 446, 450-51 (6th Cir. 2011).

As noted above, Petitioner asserts that his counsel was ineffective in failing to object to the challenged evidence. In order to prevail on a claim of ineffective assistance of counsel, Petitioner must show that counsel's errors were so serious that he was not functioning as counsel guaranteed by the Sixth Amendment and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998); *Bruner v. Perini*, 875 F.2d 531, 535 (6th Cir. 1989) (citing *Strickland v. Washington*, 466 U.S. 668, 688-96, 104 S. Ct. 2052, 2065, 69, 80 L. Ed. 2d 647 (1984)).

Assistance of counsel is ineffective where the attorney's performance is so deficient as to prejudice the defense and render the trial unfair and the result unreliable. *Wong*, 142 F.3d at 319; *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997). Even if a court determines that counsel's performance was outside the wide range of professionally competent assistance, the petitioner is not entitled to relief if his counsel's error had no effect on the judgment. *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999). Rather, a petitioner must show that the probability that the outcome of the case would have been different but for counsel's unprofessional errors is sufficient to undermine confidence in the result. *Wong*, 142 F.3d at 319; *Austin*, 126 F.2d at 848. "The performance and prejudice components of the *Strickland* test are mixed questions of law and fact." *Austin*, 126 F.2d at 848.

The court's review of defense counsel's performance is highly deferential, and defense counsel is presumed to have rendered adequate assistance by exercising reasonable professional judgment and sound trial strategy. *Wong*, 142 F.3d at 319; *Austin*, 126 F.3d at 848. The petitioner must overcome the presumption that, under the circumstances, the challenged actions

might be considered sound trial strategy.  *Strickland*, 466 U.S. at 689; *Tucker*, 181 F.3d at 754.

As noted above, the Michigan Court of Appeals reasonably held that petitioner could not show that his counsel was ineffective with respect to the admission of the police interview. Moreover, because the interview was admissible, any objection would have been futile.  Therefore, Petitioner cannot show cause for the default.  In addition, even if Petitioner had not defaulted on this claim, it fails for lack of merit.  For the reasons specified by the Michigan Court of Appeals, the prosecutor's use of the challenged statements did not violate Petitioner's constitutional rights. Therefore, because the Michigan Court of Appeals' decision with regard to claim IV did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, it is properly dismissed.

With regard to the portion of claim IV which asserts that the prosecutor knowingly used perjured testimony when Lieutenant Schram testified that he remembered Petitioner making statements to Lieutenant Start, Petitioner failed to assert this claim in his direct appeal.  Petitioner raised this claim for the first time in his motion for relief from judgment.  In addressing this claim, the trial court noted that it had been procedurally defaulted and concluded that Petitioner could not show cause and prejudice for the default, stating:

> Defendant contends that the Prosecutor knowingly presented perjured testimony.  He contends that the Prosecutor knew [Lieutenant] Schram testified falsely when he related some statements he heard the Defendant make to [Lieutenant] Schram.  Defendant's position assumes that Schram's testimony is false.  Simply because [Lieutenant] Start didn't recall Defendant's statement does not render Schram's testimony false.  In fact, [Lieutenant] Start deferred to Schram's recollections when questioned about this.

*People v. Owens*, No. 01-46044-FC, slip op. at 5 (May 8, 2006) (Docket #43).  The Michigan Court

of Appeals and the Michigan Supreme Court subsequently denied Petitioner's appeals on the motion

for relief from judgment. Because the state courts' decision with regard to this portion of

Petitioner's fourth claim did not result in a decision that was contrary to, or involved an

unreasonable application of, clearly established federal law as determined by the United States

Supreme Court, or result in a decision that was based upon an unreasonable determination of the

facts in light of the evidence presented in the state court proceeding, it is properly dismissed.

    In claim V in the original habeas corpus petition, Petitioner asserts that his

confrontation rights were violated when Anthony Lee's testimony was videotaped prior to the trial

and played for the jury in lieu of live testimony. In addressing this claim, the Michigan Court of

Appeals noted:

> Defendant first argues that his constitutional right to confront the
> witnesses against him was violated when the trial court allowed Lee's
> testimony to be videotaped in advance of trial and then played for the
> jury at trial in lieu of Lee's live testimony. We conclude that
> defendant affirmatively waived any claim of error with regard to this
> issue.

*People v. Owens*, 2004 WL 1335838, at *1 (Mich. App. Jun. 15, 2004).

    The Michigan Court of Appeals continued:

> On May 29, 2002, after having obtained several adjournments of trial
> and changing trial counsel several times, defendant again moved for
> an adjournment of his trial, which was scheduled for June 4, 2002.
> The prosecutor objected to the adjournment, arguing that he needed
> Lee's testimony, that Lee was scheduled to be sentenced for an armed
> robbery conviction on June 10, 2002, and that Lee would not receive
> the benefit of his bargain with the prosecutor if he did not testify
> before his own sentencing. [The prosecutor agreed to ask the
> sentencing judge to favorably consider Lee's cooperation in exchange
> for Lee's testimony.] The prosecutor subsequently informed the
> court, however, that he and defense counsel had discussed a
> resolution to the problem, specifically the taking of Lee's testimony
> by videotape. Defense counsel agreed that the videotape would be
> taken "for trial" and "in lieu of" Lee's testimony. The trial court
> asked defendant if he agreed with this arrangement and defendant

responded affirmatively. Lee's videotaped testimony was taken in defendant's presence, with both the prosecutor and defense counsel examining the witness.

In *People v. Carter,* 462 Mich. 206, 214-219; 612 NW2d 144 (2000), our Supreme Court discussed the concept of waiver and its effect on an issue raised on appeal. It defined waiver as "the intentional relinquishment or abandonment of a known right." *Id.* "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights." *Id.* Waiver is available in a broad array of constitutional and statutory provisions. *Id.* at 217-218. A defendant may waive errors related to the admission of evidence by entering into agreements regarding the admission of that evidence. *Id.* In this case, both defendant and defense counsel agreed that Lee's videotaped testimony could be taken "for trial" and "in lieu of" Lee's live testimony. Under the circumstances, defendant affirmatively waived any claim of error with respect to this issue. *Id.* at 219; see also *People v. Griffin,* 235 Mich.App 27, 46; 597 NW2d 176 (1999) (error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence).

*Id.* at *1-2 (footnote omitted).

As noted by the Michigan Court of Appeals, Petitioner and his counsel stipulated to the admission of Lee's testimony, waiving his right to object to the admission.  (5/29/02 Motion Tr. at 5-6, docket #29.)   One who intentionally relinquishes or waives a known right may not subsequently seek appellate review of a claimed deprivation of that right, because his waiver extinguishes any error.  *United States v. Olano,* 507 U.S. 725, 730-34 (1993).  To the extent that Petitioner is asserting that his counsel was ineffective for failing to object to the admission of the Lee videotape testimony, he cannot show the requisite prejudice.  Prejudice requires that Petitioner show that the admission of the video testimony "worked to his *actual* and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).  "'[T]he prejudice component of the cause and prejudice test is not satisfied if there is strong evidence of Petitioner's guilt and a lack of evidence to support his claim.'" *Perkins*, 58 F.3d at 219 (quoting *Rust*, 17 F.3d at 161-62).  In summarizing the evidence of Petitioner's guilt

presented at trial, the Michigan Court of Appeals stated:

> The victim's brother, James McBride, testified that he heard the sound of gunfire and went to the living room where he saw defendant struggling with the victim, who was trying to stop defendant from shooting. Defendant eventually broke free and ran from the house, firing two more shots toward the victim as he left. In the early afternoon of May 2, 2001, Stanley Hudgins turned himself in to the police and provided information that he was with defendant earlier that day and that defendant was the man who shot the victim. Although he attempted to minimize his involvement in the crime, Hudgins provided valuable information to the police, including the location of the gun that was allegedly used in the crime. Gwendolyn Hathorn, the woman with whom defendant spent the night before the shooting, and Hudgins' girlfriend both testified that they saw defendant before 8:30 a.m. on the morning of the shooting and saw him again around 9:00 a.m. that morning. Defendant changed his clothes during that time frame. This information corroborated Hudgins' version of events. Defendant was arrested on the afternoon of the shooting after an unrelated traffic stop and was lodged in the Kent County Jail. While there, he shared a cell with Anthony Lee, who subsequently testified that defendant admitted to shooting the victim.

*People v. Owens*, 2004 WL 1335838, at *1 (Mich. App. June 15, 2004). Because there is strong evidence of Petitioner's guilt and a lack of evidence to support his claim in this case, Petitioner cannot show the requisite prejudice to support a claim that his counsel was ineffective. The court concludes that claim V regarding the Lee testimony is properly denied.

In claims VI and VII in his initial application for habeas corpus relief, Petitioner claims that the failure to use witnesses Linda Keys and Gwendolyn Hathorn as alibi witnesses violated his Fourteenth Amendment right to present a defense and constituted ineffective assistance of counsel. The Michigan Court of Appeals considered this issue in Petitioner's direct appeal:

> Defendant also challenges the effectiveness of trial counsel by raising numerous issues related to counsel's performance. Because there was no Ginther hearing, our review is limited to errors apparent on the record. *People v. Walter Williams*, 223 Mich.App 409, 414; 566 NW2d 649 (1997). In considering this issue, we note defendant cites to several police reports and other documents that are not part of the

lower court record. For example, he refers to a transcript of Joyce Hudgins' police interview and a letter sent to him by counsel. Nevertheless, we have reviewed the exhibits and conclude that, even if they were properly considered, they fail to demonstrate that defense counsel was ineffective at trial.

Defendant argues counsel was ineffective for failing to adequately interview and investigate Hathorn before trial and for failing to investigate and interview Hathorn's mother, Linda Keys. Absent evidence regarding the extent of trial counsel's pretrial investigation of these witnesses, defendant has failed to establish a necessary factual predicate for his claim that counsel's failure to interview and investigate these witnesses constituted ineffective assistance of counsel. *People v. Carbin*, 463 Mich. 590, 601; 623 NW2d 884 (2001).

Defendant additionally argues defense counsel's questioning of Hathorn at trial was incomplete or unreasonable, and that the failure to call Linda Keys as a witness compromised his defense. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v. Rockey*, 237 Mich.App 74, 76; 601 NW2d 887 (1999). This Court will not substitute its judgment for that of counsel regarding matters of trial strategy and will not assess counsel's performance with the benefit of hindsight. Id. at 76-77. Our review of the record reveals that counsel adequately cross-examined Hathorn. Moreover, there is no error apparent from the record with respect to counsel's failure to call Keys as a witness. Indeed, the trial testimony indicated Keys arrived at Hathorn's house at approximately 9:00 a.m., which was after the time of the shooting. She arguably had nothing relevant or probative to contribute to the case. Any minimal contribution she may have made would not have affected the outcome of trial.

Defendant also criticizes counsel's decision with respect to presenting a traditional alibi defense and argues counsel never subjected the prosecutor's case to a meaningful, adversarial test. Defense counsel did not mention an alibi defense or argue that the evidence supported such a defense. Defense counsel did, however, present a theory of the defense, elicit evidence to support that theory, and argue that theory to the jury. He emphasized in opening argument that there was no evidence to connect defendant to the crime except for an endless string of lies and stories told by questionable witnesses. He cross-examined witnesses to establish evidence to discredit their incriminating testimony, and he argued his theory during closing argument. Counsel's decision not to present a traditional alibi defense, but to focus on the whole picture and

emphasize the lack of evidence and witness credibility, was not objectively unreasonable. The alibi evidence was extremely weak. Defendant was the only witness who offered such testimony, and he was discredited on other points at trial. We will not second-guess the chosen strategy. *Charles Williams*, *supra* at 331. While in hindsight the ultimate strategy may have been unsuccessful, this does not establish that counsel was ineffective. *People v. Stewart* (On Remand), 219 Mich.App 38, 42; 555 NW2d 715 (1996).

*People v. Owens*, 2004 WL 1335838, at *8-9 (Mich. App. Jun. 15, 2004) (footnotes omitted).

As noted by Respondent, the pertinent question in this case is whether the Michigan Court of Appeals' application of *Strickland v. Washington*, 466 U.S. 668 (1984), was unreasonable in light of federal law. The Michigan Court of Appeals noted that the asserted alibi defense would have been weak since it relied mainly on Petitioner's own testimony, and that the testimony of Keys and Hathorn would have been contradicted by the evidence that the shooting occurred before 9:00 a.m. The court concludes that the Michigan Court of Appeals' decision did not involve an unreasonable application of clearly established federal law as determined by the United States Supreme Court, nor did it result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, claims VI and VII are properly denied.

In Petitioner's supplemental petition, Petitioner asserts the claims that he raised in his second/successive motion for relief from judgment. In the opinion and order regarding this motion, the Muskegon County Circuit Court stated:

Defendant has filed a Motion for Relief from Judgment. MCR 6.502. This is his second such request. His previous motion was denied. This is the culmination of a lengthy series of post conviction proceedings which have produced the vacation of a felony firearm conviction with the balance of the judgment remaining in place.

Successive motions of this nature are prohibited except for certain recognized reasons. MCR 6.502(G). One of those is newly discovered evidence which the Defendant alleges herein.

22

The first alleged error is failure to administer an oath to the petit jury. This contention has no basis in fact. Page 132 of the trial transcript reflects the fact that the jurors were sworn in before the commencement of opening statements.

The second, third and fourth issues all related to an arraignment hearing for two material witnesses. The Defendant objects to not being present. He also contends that, in his absence, the Prosecutor was obligated to disclose what the witnesses testified to at the hearing about being threatened by members of the victim's family.

This is not newly discovered evidence. The court file reveals that the transcript of that hearing was filed on January 29, 2003 and copies mailed to counsel the same day.

The motion is DENIED. IT IS SO ORDERED.

(*People v. Owens*, Muskegon County Circuit Court No. 01-46044-FC, October 28, 2011, docket #76.) Petitioner did not appeal the trial court's denial of his motion. (Docket Sheet for *People v. Owens*, Muskegon County Circuit Court No. 01-46044-FC, docket #73.)

Therefore, it is clear that Petitioner has procedurally defaulted on these claims. In addition, these claims fail for lack of merit. Petitioner's first claim in his supplemental petition asserts that the jury had no jurisdiction to try his case because the jurors were never sworn in by the court. However, as noted by the trial court, the record shows that the jurors were sworn in before the commencement of opening statements. (8/13/02 Trial Tr. at 132, docket #33.) Therefore, Petitioner's first supplemental claim for habeas corpus relief is properly denied.

As noted by the trial court, Petitioner's remaining supplemental claims relate to an arraignment hearing for two material witnesses. Petitioner appears to be claiming that the material witness bond hearing held on June 27, 2002, was a critical stage of the proceedings to which he was entitled to be present. Petitioner also asserts that, in his absence, the prosecutor was obligated to disclose the content of the witnesses' testimony at the hearing. "In order to assess if a given portion of a criminal proceeding is a critical stage, we must ask how likely it is that significant consequences

might have resulted from the absence of counsel at the stage of the criminal proceeding." *Van v. Jones,* 475 F.3d 292, 313 (6th Cir.2007). To qualify, "[t]here must be a reasonable likelihood that [substantial] prejudice [to the defendant's rights] will arise from complete absence of counsel." *Id.* "[M]any of the stages found to be critical are those in which an opportunity may be irretrievably lost, or material may come out that may be incurably damaging." *Id.* at 314–15.

The purpose of the June 27, 2002, hearing was to ensure that Gwendolyn Hathorn and Jessica Keyes would be present at trial because they had failed to appear when the trial had previously been scheduled and when a detective attempted to serve them with subpoenas, their actions indicated an unwillingness to testify. (Docket #31 at 3-5.) During the hearing, Ms. Keyes indicated that the victim's family was "looking at [her] like threatenin' [her]." Ms Keyes stated that she was "scared" of the family. Ms. Hathorn agreed, stating that the victim's family thought they were trying to protect Petitioner. Ms. Hathorn denied trying to protect Petitioner, asserting that they were trying to help the victim. (Docket #31, pp. 7-9.) The court ordered Keyes and Hathorn to be present on August 7, 2002, the first day of trial. (Docket #31, p. 11.)

In a similar situation, the Michigan Court of Appeals held that a material witness hearing is not a critical stage of the proceedings to which a criminal defendant is entitled to be present.

> Contrary to what defendant argues, the subject of the bench warrant proceeding involved Brophy and whether she intended to appear at trial. It was not a critical stage of defendant's criminal proceeding. Defendant did not have a due process right to be present, or represented by counsel, at the proceeding. See *People v. Parker,* 230 Mich.App. 677, 689, 584 N.W.2d 753 (1998) (holding that it was not a denial of the defendant's due process rights when he and his counsel were not allowed to be present for a material witness hearing concerning the witness's fear of testifying and at which no substantive evidence was taken).

*People v. Richardson*, 2010 WL 4320392, at *17 -18 (Mich. App. Nov. 2, 2010). The court concludes that the June 27, 2002, hearing was not a "critical stage" of the proceedings and the fact that Petitioner was not present or represented by counsel did not violate his constitutional rights.

Nor does Petitioner show that the prosecutor withheld favorable or exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). It is well settled that, under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the prosecution must disclose any evidence it has in its possession or of which it is aware which is both favorable to the accused and material to guilt or punishment. A defendant does not have to make a specific request for *Brady* evidence before the government has an obligation to disclose favorable evidence. *See United States v. Agurs*, 427 U.S. 97 (1976). As the Court stated in *Kyles v. Whitley*, 514 U.S. 419 (1995), the obligation to disclose exculpatory evidence is required even absent a defense request when suppression of the evidence would be "of sufficient significance to result in the denial of the defendant's right to a fair trial." *Id.* at 1565 (citing *Agars*, 427 U.S. at 108).

In *Brady*, the petitioner and a companion, Bobit, were found guilty of murder and sentenced to death. At his trial, petitioner maintained that although he participated in the crime he did not commit the murder. Bobit had earlier confessed to the murder. However, the actual confession was withheld from defense counsel despite defense counsel's request to examine Bobit's extrajudicial statements. The Supreme Court affirmed the Court of Appeals' order granting a new trial on the issue of punishment. The court stated:

> We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

*Id.* at 87. The Court defined materiality in *United States v. Bagley*, 473 U.S. 667 (1985):

> The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

*Id.* at 682.  *See also United States v. Bencs*, 28 F.3d 555 (6th Cir 1994); *United States v. Mullins*, 22 F.3d 1365 (6th Cir. 1994).  "A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'"  *Kyles* at 1566 (citing *Bagley*, 473 U.S. at 678).

The prosecutor does not have to disclose exculpatory evidence which is otherwise available to the defense.  *United States v. Clark*, 928 F.2d 733 (6th Cir. 1991) ("No *Brady* violation exists where a defendant 'knew or should have known the essential facts permitting him to take advantage of any exculpatory information,' *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988), *cert. denied*, 488 U.S. 1040, 109 S. Ct. 864, 102 L.Ed.2d 988 (1989), or where the evidence is available to defendant from another source.").

As stated by Respondent in this case, Petitioner cannot show that the prosecutor withheld any exculpatory or favorable evidence.  Moreover, Petitioner was aware of these witnesses and was able to question them at trial.  Therefore, the court concludes that Petitioner's claims regarding the material witness bond hearing are properly denied.

In claim VIII in his initial application for habeas corpus relief, Petitioner claims that he is actually innocent, so that any procedural bar should be set aside and the merits of his claims should be addressed.  As stated by the Supreme Court:

> Federal courts are not forums in which to relitigate state trials.  The guilt or innocence determination in state criminal trials is a decisive and portentous event.  Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens.  Few rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence.

*Herrera v. Collins*, 506 U.S. 390, 401 (1993) (quotations omitted).  By his contention that the prosecutor knowingly presented false testimony, Petitioner apparently is attempting to show that his conviction is factually incorrect.  To that extent, his claim of "actual innocence" is noncognizable.

However, the court may consider the claim as it relates to a separate constitutional claim that would otherwise be barred.  "[A] claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."  *Herrera*, 506 U.S. at 404; *see also Murray v. Carrier*, 477 U.S. 478, 496 (1986).  The Supreme Court has definitively established the showing necessary to make out a case of "actual innocence."  In *Schlup v. Delo*, 513 U.S. 298 (1995), the Court set forth the standard by which such claims must be judged:

> To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eye witness accounts, or critical physical evidence -- that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

513 U.S. at 324.  Given the rarity of such evidence, the allegation of actual innocence has been summarily rejected in virtually every case.  *Calderon v. Thompson*, 523 U.S. 538, 559 (1998).  The court must determine whether Petitioner has demonstrated actual innocence by clear and convincing evidence, such that his conviction represents a "fundamental miscarriage of justice."  *See Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).  Petitioner does not attempt to introduce new evidence.  Rather, he merely attempts to relitigate evidence that was available at the time of trial.  Thus, the court concludes that his claim of actual innocence has no merit and cannot justify excusing a procedural default.

Finally, in claim IX in the original habeas corpus petition, Petitioner asserts that his appellate counsel was ineffective for failing to raise his claims regarding the allegedly unsworn jury

and the material witness hearing in his direct appeal.  However, as noted above, these claims lack merit.  Therefore, Petitioner is unable to show that he suffered the requisite prejudice as a result of his appellate counsel's failure to raise these claims on appeal.

In conclusion, the court will deny Petitioner's habeas corpus petition in it's entirety.

## IV.  NO CERTIFICATE OF APPEALABILITY

The court will deny a certificate of appealability as to each issue raised by Petitioner in this application for habeas corpus relief.  Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, the undersigned has examined each of petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  The court concludes that for the reasons set forth above, reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong.

## V. Conclusion

For the foregoing reasons, the court will deny Petitioner's habeas corpus petition.  The court will also deny Petitioner a certificate of appealability.

A separate judgment will issue.


Dated:  September 28, 2012                          _____/s/ Gordon J. Quist_____
                                                                  GORDON J. QUIST
                                                        UNITED STATES DISTRICT JUDGE